# Exhibit B

## INDEPENDENT SALES ORGANIZATION (ISO) AGREEMENT

**Effective Date:** 1/8/2024

**Parties:**

1. **The Company:**
   Delancey Street Group LLC, a [N.Y.]-organized company located at [104 W 40th Street, NYC, New York, 10018] ("**Company**").
2. **The ISO:**
   MJA Holdings INC, an independent sales organization located at [30 Clearview St, Huntington, NY 11743] ("**ISO**").

The Company and the ISO are each a "**Party**" and together, the "**Parties.**"

### RECITALS:

A. The Company provides professional debt settlement services to clients with unsecured debts, seeking to resolve and reduce such debts.

B. The ISO specializes in identifying and referring qualified prospective clients who may benefit from the Company's debt settlement services.

C. The Parties wish to establish the terms and conditions under which the ISO will refer prospective clients to the Company, and the Company will compensate the ISO for such referrals.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

### 1. DEFINITIONS

1.1 **"Client"** means any individual or entity with unsecured debt who is referred to the Company by the ISO and subsequently enrolled into the Company's debt settlement program.

1.2 **"Enrolled Debt"** means the total amount of unsecured debt that a referred Client has enrolled in the Company's debt settlement program.

1.3 **"Client Payment"** means any payment collected by the Company from a Client pursuant to the Client's debt settlement program.

## 2. Scope of Services

### 2.1 ISO's Services:

**The ISO shall:**

(a) Identify and qualify prospective clients who can benefit from the Company's services.
(b) Refer prospective clients to the Company by providing accurate and relevant data required for enrollment.
(c) Enroll eligible clients into the debt settlement program, ensuring they meet the Company's criteria.
(d) Schedule the client's initial payment into the program.
(e) Arrange an onboarding call with the assigned negotiator.
(f) Maintain strict compliance with company policies. We require the capability to promptly retrieve a call from the ISO's CRM whenever a client raises a complaint or makes any claims of misrepresentation.

### 2.2 Company's Services:

**The Company shall:**
(a) Review and assess the eligibility of clients referred by the ISO.
(b) Manage all aspects of the client relationship, including customer service, negotiations, settlements, and payment processing.
(c) Provide the ISO with monthly reports detailing new enrollments, client payments, and corresponding ISO compensation.

(d) Give the ISO exclusive right of first refusal for any file requiring a switch to a credit card processor.

## 3. COMPENSATION

### 3.1 ISO Fee:
The ISO shall earn a commission equal to fifteen percent (15%) of the Client's Enrolled Debt for each Client successfully referred and enrolled by the Company. This commission applies only to clients who complete the program in full. For clients who exit the program prematurely, the ISO will receive 50% of the fees collected up to the date of the client's departure.

### 3.2 Payment Structure:
(a) As the Company collects Client Payments over the duration of the Client's program, fifty percent (50%) of each Client Payment ("Settlement Fee Allocation") is allocated towards settlement fees.
(b) The ISO shall receive fifty percent (50%) of the Settlement Fee Allocation.

**Example:**
For a $1,000 Client Payment:

- Settlement Fee Allocation = 50% of $1,000 = $500
- ISO's portion = 50% of $500 = $250

3.3 **Payment Schedule:**
The Company will issue commission payments to the ISO on a weekly basis.

3.4 **Reporting:**
With each weekly payment, the Company shall provide an itemized weekly report identifying each Client, the Client Payment amounts received, and the ISO's corresponding commission.

3.5 **Survival of Payment Obligations:**
The ISO's right to receive commissions for Clients referred and enrolled prior to termination shall survive the termination of this Agreement. The Company shall continue to pay commissions for all Client Payments received post-termination in accordance with this Section 3.

---

## 4. TERM AND TERMINATION

4.1 **Term:**
This Agreement shall commence on the Effective Date and continue until terminated by either Party as provided herein.

4.2 **Termination for Convenience:**
Either Party may terminate this Agreement for any reason, with or without cause, by providing thirty (30) days' prior written notice to the other Party.

4.3 **Termination for Cause:**
Either Party may terminate this Agreement immediately upon written notice if the other Party materially breaches any provision of this Agreement and fails to cure such breach within ten (10) days of receiving written notice of the breach.

4.4 **Effect of Termination:**
Upon termination for any reason, each Party shall promptly return or destroy the other Party's Confidential Information. However, the ISO shall remain entitled to receive any commission payments that accrue from Clients enrolled prior to the termination date, as outlined in Section 3.5.

4.5 **Non-Solicitation Clause**

Both parties agree that, during the term of this agreement and for a period of 2 years following its termination, neither party shall directly or indirectly solicit, recruit, or hire any employee, contractor, or representative of the other party without prior written consent. This restriction

applies whether the solicitation is for employment, contract work, or any other professional engagement. Both parties further agree to refrain from inducing or attempting to induce such individuals to terminate their relationship with the other party.

## 5. CONFIDENTIALITY

### 5.1 Confidential Information:
Each Party agrees that all non-public, proprietary, or sensitive information received from the other Party, including Client information, business strategies, pricing, and program details ("Confidential Information"), shall be held in strict confidence and used solely for the purposes of performing under this Agreement.

### 5.2 Non-Disclosure and Care of Information:
Neither Party shall disclose the other Party's Confidential Information to any third party without the prior written consent of the disclosing Party, except as required by law or regulation. Each Party shall take reasonable steps to protect the confidentiality of such information.

### 5.3 Survival:
The confidentiality obligations set forth herein shall survive termination of this Agreement for a period of five (5) years or for as long as the information remains confidential, whichever is longer.

## 6. COMPLIANCE WITH LAWS AND ETHICAL STANDARDS

### 6.1 General Compliance:
Each Party shall comply with all applicable federal, state, and local laws, regulations, and industry standards governing its activities under this Agreement, including, but not limited to, the Fair Debt Collection Practices Act (FDCPA) and consumer protection laws.

### 6.2 ISO Conduct:
The ISO shall not engage in any deceptive, unfair, or misleading practices and shall refrain from any misrepresentations regarding the Company's services or capabilities. The ISO shall comply with all applicable telemarketing, data privacy, and consumer protection statutes and regulations when identifying, qualifying, and referring prospective Clients.

## 7. INDEMNIFICATION

### 7.1 Mutual Indemnification:
Each Party (the "Indemnifying Party") shall defend, indemnify, and hold harmless the other Party (the "Indemnified Party"), its affiliates, and their respective officers, directors, employees, and agents, from and against any and all claims, liabilities, damages, judgments, awards, losses,

costs, and expenses (including reasonable attorneys' fees) arising out of or resulting from: (a) The Indemnifying Party's breach of any representation, warranty, or obligation under this Agreement.
(b) The Indemnifying Party's negligent, fraudulent, or wrongful acts or omissions.

## 8. DISPUTE RESOLUTION

### 8.1 Good Faith Negotiations:
The Parties shall first attempt to resolve any dispute, claim, or controversy arising out of or relating to this Agreement through good faith negotiations.

### 8.2 Arbitration:
If the Parties cannot resolve the dispute through negotiation within thirty (30) days, the dispute shall be submitted to binding arbitration in New York.

## 9. LIMITATION OF LIABILITY

### 9.1 Exclusion of Certain Damages:
Except for a breach of confidentiality or indemnity obligations, neither Party shall be liable to the other for any indirect, incidental, consequential, punitive, or special damages, including lost profits or business interruption, even if advised of the possibility of such damages.

### 9.2 Cumulative Liability:
Each Party's cumulative liability under this Agreement, whether in contract, tort, or otherwise, shall not exceed the total amount of commissions paid or payable under this Agreement in the twelve (12) months preceding the event giving rise to the liability, except in cases of gross negligence, willful misconduct, or fraud.

## 10. RELATIONSHIP OF THE PARTIES

### 10.1 Independent Contractors:
The Parties are independent contractors and not partners, joint venturers, franchisors/franchisees, or agents of one another. Neither Party has the authority to bind the other Party to any agreement or obligation.

## 11. MISCELLANEOUS

### 11.1 Entire Agreement:
This Agreement constitutes the entire understanding between the Parties regarding the subject matter and supersedes all prior and contemporaneous agreements, proposals, or understandings, whether oral or written.

### 11.2 Amendments:
Any modifications or amendments to this Agreement must be in writing and signed by both Parties.

### 11.3 Governing Law:
This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

### 11.4 Assignment:
Neither Party may assign this Agreement, in whole or in part, without the prior written consent of the other Party. Any attempt to assign without such consent is void.

### 11.5 Severability:
If any provision of this Agreement is held to be invalid or unenforceable, such provision shall be deemed severed, and the remaining provisions shall remain in full force and effect.

### 11.6 Notices:
Any notice required under this Agreement shall be given in writing and delivered by hand, email with confirmed receipt, or by a nationally recognized overnight courier service to the addresses set forth in the introductory paragraph (or as later updated in writing by the Parties).

---

## SIGNATURES

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**For the Company:**
Name: Vinay Metharamani

Title: CEO

Signature: *Vinay Metharamani* (Signed by: F3D6708EF5204E8...)

Date: 01/08/2025

**For the ISO:**
Name: MJA Holdings INC

Title: Owner

Signature: *MJA Holdings INC* (Signed by: F3C2ABE134B741E...)

Date: 01/08/2025