**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

DAVID TOM, on behalf of
himself and others similarly situated,

*Plaintiff*,

DELANCEY STREET GROUP LLC d/b/a
MCA JUSTICE,

*Defendant.*

Case No. 1:25-cv-566 (GTS/DJS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELANCEY STREET
GROUP LLC (IMPROPERLY PLED AS DELANCEY STREET GROUP LLC D/B/A
MCA JUSTICE**

---

Of Counsel:
Thomas A. Leghorn, Esq.

On the Brief:
Thomas A. Leghorn, Esq.
Elyse S. Schindel, Esq.

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS.........................................................................................................2

   A.   Delancey Street Group LLC Engages MJA Holdings, Inc. ...............................................2

   B.   Plaintiff David Tom's Actions Prior to the Filing of the Complaint, and Allegations in the Complaint.............................................................................................................................4

   C.   Allegations in the Complaint ............................................................................................6

PROCEDURAL HISTORY........................................................................................................6

LEGAL STANDARD ................................................................................................................7

LEGAL ARGUMENT ...............................................................................................................8

   I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRELY WITH PREJUDICE .....................................................................................................................8

      A.   The Complaint Should be Dismissed Because the Phone Number in Question is a Business, Not Residential Phone Number ................................................................8

      B.   Count 1 of the Complaint Should be Dismissed with Prejudice ..............................11

         1.   Plaintiff Cannot Establish Direct Liability by Delancey Street...........................13

         2.   Plaintiff Cannot Establish Vicarious Liability by Delancey Street......................15

            a.   Delancey Street Does Not Have Actual Authority Over MJA ........................16

            b.   Delancey Street Does Not Have Apparent Authority Over MJA ...................17

            c.   Delancey Street Did Not Ratify the Actions of MJA .......................................19

      C.   Count 2 of the Complaint Should be Dismissed with Prejudice .........................20

      D.   Count 3 of the Complaint Should be Dismissed with Prejudice .........................22

CONCLUSION.........................................................................................................................24

## Table of Authorities

*Cases*                                                                                                              *Page(s)*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 7

*Barr v. Macys.com, LLC*
   *22-cv-07867* (ALC), 2023 U.S. Dist. LEXIS 176653, 2023 WL 6393480 (S.D.N.Y. Sep. 29,
   2023) .............................................................................................................................. 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 7

*Cacho v McCarthy & Kelly LLP*,
   739 F Supp 3d 195 [SDNY 2024] ............................................................................ 9, 17, 18

*Campbell-Ewald Co. v Gomez*,
   577 US 153 [2016] .......................................................................................................... 15

*Carrodine v Flatiron Media, LLC*,
   2023 US Dist LEXIS 210182 [SDNY Nov. 27, 2023, No. 22-CV-9660 (JMF)] .................. 16

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ............................................................................................ 7

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ........................................................................................... 8

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ............................................................................................ 7

*Dobronski v Tobias & Assoc., Inc.*,
   2024 US Dist LEXIS 47309 [ED Mich Mar. 18, 2024, No. 23-10331] ............................... 21

*Dobronski v. Selectquote Ins. Serv's*,
   462 F. Supp. 3d 784 (E.D. Mich. 2020) ........................................................................... 21

*Dobronski v. SunPath Ltd.*,
   2020 WL 8840311 (E.D. Mich. July 27, 2020) ................................................................. 21

*Dobronski v. Transamerica Life Ins. Co., No. 360506*,
   2023 Mich. App. LEXIS 3789, 2023 WL 3665869 (Mich. Ct. App. May 25, 2023) ........... 21

*Gillam v. Reliance First Cap., LLC*,
   2023 U.S. Dist. LEXIS 29477, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ...................... 10

*Hulett v Eyebuydirect, Inc.*,
   2025 US Dist LEXIS 112645 [NDNY June 13, 2025, No. 1:24-cv-996 (AMN/MJK)] ........ 23

4935-9903-1376, v. 1

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006) ................................................................... 7

*Mantha v. Quotewizard.com, LLC*,
  No. 19-12235-LTS, 2022 U.S. Dist. LEXIS 19502 (D. Mass. Feb. 3, 2022).......................... 9

*Mattson v. Quicken Loans Inc., No. 3:18-CV-00989-YY*,
  2019 U.S. Dist. LEXIS 225872, 2019 WL 7630856 (D. Or. Nov. 7, 2019) ........................ 10

*Nichols v Niagara Credit Recovery, Inc.*,
  2013 US Dist LEXIS 64671 [NDNY May 7, 2013, No. 5:12-cv-1068 (MAD/TWD)] ........ 15

*Simmons v. Charter Commc'ns, Inc.*,
  222 F. Supp. 3d (2016) ................................................................... 23

*Smith v. Truman Road Development, LLC, No. 4:18-cv-00670-NKL*,
  2020 U.S. Dist. LEXIS 74330, 2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) ................... 10

*Sprewell v. Golden State Warriors, No. 99-15602*,
  2001 U.S. App. LEXIS 20434 (9th Cir. 2001) ................................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ................................. 7-8

*Thompson v. Permanente Med. Grp., Inc., No. 12-CV-01301-JST*,
  2013 U.S. Dist. LEXIS 60909 (N.D. Cal. Apr. 29, 2013) .................................... 7

*Worsham v. Travel Options, Inc.*,
  2016 WL 4592373 (D. Md. Sept. 2, 2016) ..................................................... 20

**Statutes**

12, 2025, MCA ............................................................................ 4, 5

47 U.S.C. § 227 ...................................................................... 6, 20, 22

47 U.S.C. § 227(b)(1)(B) ................................................................ 8, 10

47 U.S.C. § 227(c) ........................................................................ 11

47 U.S.C. § 227(c)(3)(F) .................................................................. 12

47 U.S.C. § 227(c)(5) ................................................................. 12, 20

§2.2 ...................................................................................... 3

§6.1 ............................................................................... 3, 17, 18

§6.2 ...................................................................................... 3

§10.1 .......................................................................... 3, 16, 18, 21

§227(c) ..................................................................... 9, 11, 13, 20

§227(c)(5) ............................................................................... 12

§§3.1 ..................................................................................... 3

iii

***Rules***

FRCP 12(b)(6) ................................................................................................... 6, 24

Rule 12(b)(6) ....................................................................................................... 7

4935-9903-1376, v. 1

Defendant DELANCEY STREET GROUP LLC (IMPROPERLY PLED AS DELANCEY STREET GROUP LLP D/B/A MCA JUSTICE) ("Delancey Street"), by its attorneys, respectfully submits this memorandum in support of its motion to dismiss Plaintiff's Complaint in its entirety pursuant to the Federal Rules of Civil Procedure Rule ("FRCP") 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff DAVID TOM ("Plaintiff"), files this lawsuit on behalf of himself and other similarly situated alleging that Delancey Street violated the Telephone Consumer Protection Act ("TCPA") when an entity named MCA Justice sent him text messages between March 6, 2025, and March 10, 2025. Specifically, Plaintiff alleges that he received text messages to his "residential" phone number – (321) 917-0760 – which he claims was a violation of the TCPA provisions which prohibit phone calls to individuals listed on the National Do Not Call Registry. Plaintiff also alleges that Delancey Street does not have the proper procedures in place to maintain an internal do not call list, in violation of the TCPA.

Plaintiff's Complaint fails to state a claim for several reasons. First, the phone number that Plaintiff claims is a "residential" phone number is in fact a business phone number, for which the TCPA does not apply. There is uncontroverted publicly available information that this phone number is the business phone number for Plaintiff David Tom's business, a gun and firearm FFL Dealer in Florida, which is licensed with a Federal Firearms License. Therefore, the communications at issue, which were sent to a business phone number, are not in violation of the TCPA as a matter of law, and the Complaint should be dismissed with prejudice on this basis.

Second, as to the substantive claims, Plaintiff fails to state a cause of action in Counts 1-3, which allege violations of: the TCPA on behalf of Plaintiff and the "National Do Not Call" registry class (Count 1); the TCPA on behalf of Plaintiff and the "Telemarketing Caller ID Class" (Count

2); and the TCPA on behalf of Plaintiff and the "Internal DNC Class" (Count 3). Plaintiff's claims are based on the incorrect premise that "Delancey Street is MCA Justice". Delancey Street contracted with an Independent Sales Organization, MJA Holdings, Inc. ("MJA"). *See* Exhibit B. When Delancey Street engaged MJA in January 2025, the company name was MJA Holdings, Inc. At some point between January 2025 and March 2025, MJA Holdings, Inc. began operating as MCA Justice.[1] Delancey Street learned of the change of name in late March 2025. Delancey Street does not do business under the name MJA Holdings, Inc. or MCA Justice. Delancey Street is not directly liable as it did not initiate the offending telemarketing calls. Delancey Street is not vicariously liable for MJA's actions, as there was no agency relationship with the MJA, which initiated the calls. As Plaintiff's flawed premise is plainly refuted, the TCPA claims upon which Plaintiff bases the flawed premise must be dismissed.

## STATEMENT OF FACTS

### A.  Delancey Street Group LLC Engages MJA Holdings, Inc.

"MCA Justice" is not an "illegally and fictitiously named" entity of Delancey Street. *See* Exhibit A, ¶¶30, 32. Nor is "MCA Justice" an "illegal and fictitious" "marketing arm" of Delancey Street for Delancey Street to hide "ill will". *See* Exhibit A, ¶32. Defendant Delancey Street Group LLC ("Delancey Street") provides professional debt settlement services to clients with unsecured debts, seeking to resolve and/or reduce such debts. On January 8, 2025[2], pursuant to an Independent Sales Organization (ISO) Agreement ("the Agreement"), Delancey Street engaged an Independent Sales Organization, MJA, which specializes in identifying and referring qualified prospective clients who may benefit from Delancey Street's debt settlement services. *See* Exhibit B. When Delancey Street engaged MJA in January 2025, the company name was MJA Holdings,

---

[1] MCA Justice will be referred to as MJA throughout this brief.
[2] The Agreement is dated January 8, 2024, which is a scrivener's error. The agreement was entered into on January 8,2025.

4935-9903-1376, v. 1

Inc. At some point between January 2025 and March 2025, MJA Holdings, Inc. began operating as MCA Justice. Delancey Street learned of the change of name in late March 2025. *See* Exhibit C. **Delancey Street does not do business under the name MJA Holdings, Inc. or MCA Justice.**

Pursuant to the Agreement, MJA was to: (a) identify and qualify prospective clients who can benefit from the Company's services; (b) refer prospective clients to the Company by providing accurate and relevant data required for enrollment; and (c) enroll eligible clients into the debt settlement program, ensuring they meet the Company's criteria; (d) schedule the client's initial payment into the program; (e) arrange an onboarding call with the assigned negotiator; and (f) Maintain strict compliance with company policies. *See* Exhibit B, §2.1. The Agreement also requires that MJA has the capability to promptly retrieve a call from MJA's CRM whenever a client raises a complaint or makes any claims of misrepresentation. *See* Exhibit B, §2.1. The Agreement also set forth Delancey Street's duties and obligations. *See* Exhibit B, §2.2. The Agreement outlined MJA's compensation structure. *See* Exhibit B, §§3.1., 3.2(a), 3.2(b).

The Agreement states that "[e]ach Party shall comply with all applicable federal, state, and local laws, regulations, and industry standards governing its activities under this Agreement, including, but not limited to, the Fair Debt Collection Practices Act (FDCPA) and consumer protection laws". *See* Exhibit B, §6.1. The Agreement explicitly states that MJA "shall not engage in any deceptive, unfair, or misleading practices and shall refrain from any misrepresentations regarding the Company's services or capabilities. MJA shall comply with all applicable telemarketing, data privacy, and consumer protection statutes and regulations when identifying, qualifying, and referring prospective Clients". *See* Exhibit B, §6.2.

Finally, the Agreement states: "The Parties are **independent contractors** and not partners, joint venturers, franchisors/franchisees, or agents of one another. Neither Party has the authority to bind the other Party to any agreement or obligation". [Emphasis added]. *See* Exhibit B, §10.1.

It is Delancey Street's understanding that MJA works with multiple debt settlement companies, in addition to Delancey Street. The non-exclusive relationship between Delancey Street is a factor that supports Delancey Street's statement that MJA runs its own business. Delancey Street does not control how and when MJA makes calls or engages individuals in communications. Delancey Street has zero day-to-day control over MJA's operations. MJA serves as an independent contractor, pursuant to the Agreement, and Delancey Street has no supervisory role in MJA's operations. In March 2025, this was a brand-new vendor relationship. Prior to March 2025, Delancey Street had not received a single complaint about MJA's practices.

**B.    Plaintiff David Tom's Actions Prior to the Filing of the Complaint, and Allegations in the Complaint**

Plaintiff alleges that he received "over eight (8) text messages" "from Delancey Street" from March 6, 2025, and continuing through the present. *See* Exhibit A, ¶25. The Complaint cites eight (8) text messages that were sent between March 6, 2025 and March 10, 2025. *See* Exhibit A, ¶26. The Complaint alleges that each text messages came from the phone number "631-314-6017". *See* Exhibit A, ¶26. The Complaint contains screenshots of the alleged text messages at issue. *See* Exhibit A, ¶29. The Complaint also includes screenshots of emails between MCA Justice[3] and Plaintiff on March 6, 2025 and March 10, 2025. *See* Exhibit A, ¶¶32-33. The screenshots of the text messages clearly show that a text message is sent from "John with MCA Justice", to which Plaintiff David Tom responds "yes" – **that is a clear invitation for further communication**. The

---

[3] An article dated March 12, 2025, MCA Justice is identified as a leading firm in Merchant Cash Advance (MCA) debt relief.

second text message from "John" was then met with a response from Plaintiff David Tom that **he wanted further communication from MCA Justice**.

According to the Complaint, Plaintiff David Tom engaged in email communications with an individual named "John Guzzetti", identified in his signature line as "Customer Support at MCA Justice". *Ibid.* John Guzzetti's email communications with Plaintiff are from an MCA Justice email address: john@mca-justic.com. *Ibid.* In the email exchange, "John" states "[MJA is] a marketing arm for Delancey Street". *Ibid.* Based on these emails, the Complaint alleges that "'MCA Justice' *is* Defendant Delancey Street". *See* Exhibit A, ¶34.

On March 10, 2025, at 2:29pm (very shortly after the email exchange that is included in the Complaint), Plaintiff David Tom emailed Delancey Street, advising he was receiving "a text campaign from MCA Justice stating that they work on MCA's and companies like mine – and the rep says 'We are a marketing arm for Delancey Street. Delancey Street is the actual Organization that will be handling the MCA Debt Restructure.'" *See* Exhibit D. His email also raised several questions about Delancey Street and MCA Justice. *See* Exhibit D.

On March 11, 2025, Plaintiff David Tom wrote again to Delancey Street, and provided his cell phone number, on which he claims he received text messages marketing the services of Delancey Street – (321) 917-0760. *See* Exhibit D.

The Complaint alleges that Plaintiff David Tom had a "residential, non-commercial telephone number"[4] which was "eligible for registration on the National Do Not Call Registry" and that this phone number was registered on the NDNCR. *See* Exhibit A, ¶¶18, 21, 22. Based on emails exchanged between Plaintiff David Tom and Delancey Street prior to the initiation of this litigation, Plaintiff David Tom advised that his telephone number is (321) 917-0760. *See* Exhibit

---

[4] (321) XXX – XXXX.

4935-9903-1376, v. 1

D. A search of this telephone number reveals that this telephone number is associated with two (2) business entities – Goingquiet.com and Tom & Company, LLC. This phone number is listed on various websites, and with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), as the primary contact for "GoingQuiet", a gun shop located at 1101 W Hibiscus Boulevard, Melbourne, Florida.

### C. <u>Allegations in the Complaint</u>

The Complaint alleges that "'MCA Justice' *is* Defendant Delancey Street". *See* Exhibit A, ¶34. However, this allegation in the Complaint is conclusory and without any additional factual support. In fact, the allegations in the Complaint contradict this flawed premise. The Complaint includes a chart which shows that the phone number "631-314-6017" is associated with a location, "Babylon, NY". *See* Exhibit A, ¶¶26-28. Delancey Street's address is 104 W 40th Steet, New York, New York 10018, and the company is not located in Babylon, New York.

Plaintiff further alleges that the text messages alleged in the Complaint "were unwanted", "nonconsensual encounters". *See* Exhibit A, ¶37. The Complaint alleges that Plaintiff never provided his consent or requested the calls. *See* Exhibit A, ¶39.

The Complaint includes class action allegations. *See* Exhibit A, ¶¶41-48. As to the specific causes of action, the Complaint alleges Violations of the TCPA, 47 U.S.C. § 227 (On Behalf of Plaintiff and the National DNC Class) (Count 1); Violations of the TCPA, 47 U.S.C. § 227 (On Behalf of Plaintiff and the Telemarketing Caller ID Class) (Count 2); and Violations of the TCPA, 47 U.S.C. § 227 (On Behalf of Plaintiff and the Internal DNC Class) (Count 3).

### <u>PROCEDURAL HISTORY</u>

On May 6, 2025, Plaintiff filed the Complaint alleging violations of the TCPA, 47 U.S.C. § 227. *See* Exhibit A. Plaintiff entered a stipulation extending the time for Delancey Street to

Answer or otherwise respond to the Complaint. (ECF #6). Delancey Street's Motion to Dismiss the Complaint in lieu of filing an Answer pursuant to FRCP 12(b)(6) timely follows.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not satisfied where the facts alleged in the complaint merely support a "sheer possibility that a defendant has acted unlawfully" or where the complaint pleads facts that are "'merely consistent with' a defendant's liability." *Id.* In addressing a motion to dismiss, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, No. 99-15602, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. 2001). Dismissal is appropriate "where the complaint lacks . . . sufficient facts to support a cognizable legal theory." *Thompson v. Permanente Med. Grp., Inc., No.* 12-CV-01301-JST, 2013 U.S. Dist. LEXIS 60909, at *5 (N.D. Cal. Apr. 29, 2013).

In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). In deciding a motion to dismiss, a district court "must

7

consider the complaint in its entirety, as well as other sources. . . in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (citations omitted). Documents a defendant attaches to a motion to dismiss can be considered "if they are referred to in the plaintiff's complaint and are central to her claim" because "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted).

Delancey Street properly includes the agreement executed between Delancey Street and MJA, email communications between Plaintiff David Tom and MJA, email communications between Plaintiff David Tom and Delancey Street, and information related to the phone number associated with Plaintiff David Tom in the Complaint, as exhibits to this Motion because Plaintiff refers to Delancey Street and MJA's business relationship as well as the alleged actions of Delancey Street as it pertains to the alleged TCPA violations in the Complaint, and is therefore central to the claim.

## LEGAL ARGUMENT

### I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRELY WITH PREJUDICE

#### A.    The Complaint Should be Dismissed Because the Phone Number in Question is a Business, Not Residential Phone Number

At the outset, this Complaint should be dismissed because the phone number that Plaintiff David Tom claims is a "residential" telephone number, is in fact, a business telephone number. 47 U.S.C. § 227(b)(1)(B) states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

[. . .]

> (B) to initiate any telephone call to any *residential* telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B); . . . .

§227(c) addresses telephone solicitations that intrude on the privacy of the subscriber. The Federal Communications Commission ("FCC") exercised its authority under §227(c) by promulgating regulations that established a National Do Not Call Registry. The TCPA prohibits any "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Moreover, the FCC's regulations prohibit any "person or entity" from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

The applicability of §227(c) depends on the type of subscriber and the function for which the subscriber uses the phone. (*Cacho v McCarthy & Kelly LLP*, 739 F Supp 3d 195, 200-208 [SDNY 2024]). *See also Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS, 2022 U.S. Dist. LEXIS 19502 (D. Mass. Feb. 3, 2022), at *4 (holding that "residential" is "a functional term not tethered to a particular technology"). Construing the TCPA according to its plain language, a "residence" is simply "[t]he place where one actually lives," that is, one's "dwelling." *Residence*,

9

Black's Law Dictionary (11th ed. 2019). "Residential" means "of or relating to residence or residences." *Residential*, Merriam-Webster Dictionary (2024), https://www.merriam-webster.com/dictionary/residential. A "subscriber" is "[a] person who makes a regular payment in return for entitlement to . . . access to a commercially provided service." *Subscriber*, Oxford English Dictionary (2024)[5]. Thus, a residential subscriber is one who maintains a phone "for residential purposes," *Gillam v. Reliance First Cap., LLC*, 2023 U.S. Dist. LEXIS 29477, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023)—i.e., for personal activities associated with his or her private, domestic life.

The FCC has clarified that "the National Do Not Call applies [only] to 'residential subscribers' and does not preclude calls to businesses." 23 FCC Red. 9779, 9785 (Jun. 17, 2008); *see* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry"); 16 C.F.R. § 310.4(b)(7) (exempting from Do Not Call protections any "[t]elephone calls between a telemarketer and any business").

Where there is clear evidence that a cell phone line is used only or primarily as a business line, courts have granted summary judgment to the defendants. *See Smith v. Truman Road Development, LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, 2020 WL 2044730, at *11 (W.D. Mo. Apr. 28, 2020); *Mattson v. Quicken Loans Inc.*, No. 3:18-CV-00989-YY, 2019 U.S. Dist. LEXIS 225872, 2019 WL 7630856, at *5 (D. Or. Nov. 7, 2019). Specifically, in *Bank v. Independent Energy Group, LLC*, the court held that because the plaintiff provided the subject telephone number on his business card, professional letterhead of his law practice, and in pleadings

---

[5] https://www.oed.com/dictionary/subscriber

and court filings, the number was not "residential" within the meaning of the TCPA. No. 12-CV-1369-JG-VMS, 2015 U.S. Dist. LEXIS 96532, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015).

The Complaint should be dismissed because Plaintiff's phone number in question – (321) 917-0760 – was not a "residential" number within the meaning of the TCPA. Based on emails exchanged between Plaintiff David Tom and Delancey Street prior to the initiation of this litigation, Plaintiff David Tom advised that his telephone number is (321) 917-0760. *See* Exhibit E. A search of this telephone number reveals that this telephone number is associated with two (2) business entities – Tom & Company, LLC and its domain name, Goingquiet.com, and is associated with 1101 W Hibiscus Blvd, Suite 103A, Melbourne, Florida 32901, Hibiscus Business Center (a dedicated commercial property). *See* Exhibit F. This business is a gun and firearm FFL Dealer in Florida, which is licensed with a Federal Firearms License (#1-59-009-07-9G-11611 – Dealer in Firearms (Type 07)). This license was issued to Tom & Company LLC DBA GoingQuiet.com. The Required Business Contact for this license is (321) 917-0760. *See* Exhibit F.

Additionally, this phone number is listed on various websites, including a Google Business Profile, and the Better Business Bureau, as the primary contact for "GoingQuiet. It is clear from the multiple sources of readily and publicly available information that the phone number in question is a business phone number, and not a residential phone number, and therefore, this Complaint should be dismissed with prejudice.

**B. Count 1 of the Complaint Should be Dismissed with Prejudice**

In Count 1, Plaintiff brings a claim against Delancey Street pursuant to 47 U.S.C. § 227(c) for violations of 47 C.F.R. § 64.1200(c) on his behalf, and on behalf of "the National DNC Class", based on the alleged eight (8) unsolicited calls to Plaintiff's phone number, which Plaintiff claims is a residential phone number registered on the DNCR, without Plaintiff's consent. *See* Exhibit A,

¶50. The Complaint alleges that "the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered". *See* Exhibit A, ¶21.

Pursuant to § 227(c) of the TCPA, the FCC issued 47 C.F.R. § 64.1200(c)(2) providing for the creation of a national do-not-call registry ("DNCR"). The regulation states that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *Id.* The TCPA also provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [DNCR] may . . . bring . . . an action . . . to enjoin such violation" and "an action to recover for actual monetary loss from such violation, or to receive up to $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(c)(5). The TCPA requires "prior express written consent" by the recipient of the phone call to lawfully initiate any telephone solicitation to a person listed on the DNCR. 47 C.F.R. § 64.1200(a)(2).

§227(c)(5) of the TCPA provides a private right of action for violations of 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitation to telephone numbers on the national DNCR. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). §227(c)(3)(F) requires the promulgation of regulations that "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in" the NDNCR. 47 U.S.C. § 227(c)(3)(F). The NDNCR is a database compiled by the FCC and comprised of individuals who object to receiving telephone solicitations. The ensuing regulation prohibits "any telephone solicitation to . . . [a]

residential telephone subscriber who has registered his or her telephone number on the [NDNCR]." 47 C.F.R. § 64.1200(c)(2).

A "telephone solicitation" is defined as a "message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but does not include messages sent to "any person with that person's prior express invitation or permission" or "[t]o any person with whom the caller has an established business relationship . . . ." *Id.* § 64.1200(f)(15)(i)-(ii). The "express invitation or permission" language is repeated in the exceptions to liability for initiating a telephone solicitation to a number on the NDNCR -- when the caller or sender "has obtained the subscriber's prior express invitation or permission[, which] must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Id.* § 64.1200(c)(2)(ii).

To support a TCPA claim against Delancey Street, Plaintiff can allege either (1) direct liability by showing that Delancey Street initiated the offending telemarketing calls, or (2) vicarious liability by showing that Delancey Street was in an agency relationship with the entity that initiated the calls. A plaintiff can establish vicarious liability in this context by common law agency principles. *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013). As set forth in more detail below, Plaintiff fails to state a plausible TCPA claim against Delancey Street under §227(c) because he has not pled any factual allegations connecting the calls to Delancey Street under theories of direct liability and/or vicarious liability.

### 1.  **Plaintiff Cannot Establish Direct Liability by Delancey Street**

The Complaint fails to allege any facts to establish Delancey Street initiated the calls in question within the meaning of the TCPA. In the Complaint, Plaintiff includes a table providing

13

details as to the eight (8) alleged offending text messages (*See* Exhibit A, ¶26), and the screenshots of the text messages (*See* Exhibit A, ¶29). In reading these paragraphs of the Complaint in tandem, each text message was initiated by a phone number "631-314-6017", which, according to the screenshots of the text messages was from "John with MCA Justice". As such, Delancey Street cannot be liable under the TCPA where it neither made the calls in question, nor controlled or directed the party that made the calls. Further, Plaintiff's counsel's "research" into the "631-314-6017" phone number shows that this phone number is associated with a location, "Babylon, NY". *See* Exhibit A, ¶26. Delancey Street's address is 104 W 40th Steet, New York, New York 10018, and the company is not located in Babylon, New York.

Plaintiff further relies exclusively on a statement in an email from "John" at MCA Justice that MCA Justice "is the marketing arm for Delancey Street" in support of the baseless allegation that "'MCA Justice' *is* Defendant Delancey Street". *See* Exhibit A, ¶34. This threadbare and factually unsupported allegation is based on an off-hand remark from an employee of MCA Justice does not establish an ownership relationship or connection between Delancey Street and MJA. "John" is speaking for MJA in his email correspondence with Plaintiff David Tom; he is not speaking for Delancey Street in this email. Further, only "John" knows the meaning of a "marketing arm" as he used that phrase in the subject email. Delancey Street never directed him – or anyone employed by MJA – to user that phrase. "John's" use of the phrase "marketing arm" does not imply that Delancey Street *is* MJA. The Complaint simply does not allege sufficient facts that Delancey Street is MJA, and that Delancey Street sent the text messages to Plaintiff David Tom or directed MJA to do so.

Further, even if Plaintiff David Tom interpreted "John's" email to mean that MJA is the same company as Delancey Street, the irrefutable factual evidence set forth in this motion firmly

14

establishes that Delancey Street is *not* MJA. *See* Exhibit B. Plaintiff's Complaint must allege something more than this conclusory and factually inaccurate statement, such as a direction from Delancey Street to MJA. The statement from "John" in the email cited by Plaintiff in the Complaint is not enough, on its own, to substantiate the allegation in the Complaint that MJA is Delancey Street.

Therefore, this Court can make the reasonable inference that MJA (a marketing agency wholly separate from Delancy Street) is the initial caller, not Delancey Street. Accordingly, Delancey Street cannot be directly liable for any of the calls and Count 1 of the Complaint should be dismissed with prejudice.

### 2. Plaintiff Cannot Establish Vicarious Liability by Delancey Street

The Complaint also does not adequately plead vicarious liability. In 2013, the FCC ruled that under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Supreme Court affirmed this ruling in *Campbell-Ewald Co. v Gomez*. (*Campbell-Ewald Co. v Gomez*, 577 US 153 [2016]) (holding that the U.S. Navy could be vicariously liable for the text messages sent by a subcontractor hired to develop a multimedia recruiting campaign). Whether the company is liable for the actions of the third-party turns on common law principles of agency. The existence of an agency relationship can be shown by demonstrating (1) actual authority, (2) apparent authority, or (3) ratification.

This Court has issued one ruling on the issue of vicarious liability under the TCPA. In *Nichols v Niagara Credit Recovery, Inc.*, this Court held that Plaintiff must assert more than "[c]onclusory allegations of agency" to state a claim of vicarious liability. Specifically, the court held it was insufficient for the plaintiff to merely allege that one company placed an account with another company that then engaged in the TCPA violations. Without any allegations that a principal

4935-9903-1376, v. 1

exercised control over an agent's actions, there could be no liability. (*Nichols v Niagara Credit Recovery, Inc.*, 2013 US Dist LEXIS 64671, at *11-12 [NDNY May 7, 2013, No. 5:12-cv-1068 (MAD/TWD)]). For Plaintiff to establish Delancey Street is vicariously liable for any of the challenged text messages, Plaintiff must point to sufficient factual allegations to plausibly state an agency relationship between Delancey Street and MJA, the entity that placed the calls. Plaintiff's Complaint does not do so, and the Complaint should be dismissed in full.

### a. <u>Delancey Street Does Not Have Actual Authority Over MJA</u>

As to actual authority, Plaintiff must plead sufficient facts to establish that the principal assigns "the agent's task and controls the means and details of the process by which the agent will accomplish that task". Plaintiff can establish actual authority by alleging, among other things, that the agent and principal had "entered into a contract for services," and that, through the contract the principal agreed to pay the agent based on the number of leads generated or the quantity of traffic, that the principal "***retained the ability to substantially control the marketing activities***". (*Carrodine v Flatiron Media, LLC*, 2023 US Dist LEXIS 210182 [SDNY Nov. 27, 2023, No. 22-CV-9660 (JMF)]).

Plaintiff's Complaint fails to allege sufficient facts that Delancey Street had the ability to substantially control the marketing activities of MJA. The Complaint is devoid of any factual allegations that Delancey Street manifested to MJA its assent that MJA act on Delancey Street's behalf. Nor does Plaintiff allege Delancey Street controlled the manner or means of MJA's operations. Although Plaintiff broadly alleges that MJA "is" Delancey Street, Plaintiff does not allege sufficient facts to establish Delancey Street had control over MJA's day-to-day marketing or its phone call practices, nor that Delancey Street had such control over MJA. The Complaint merely contains broad and conclusory, and factually inaccurate claim. Based on the terms of the

16

Agreement between Delancey Street and MJA, Delancey Street was not in control of how MJA was to solicit applications. The Complaint fails to allege Delancey Street controls the manner and means of MJA's operations to create an agency relationship.

In fact, the opposite occurred. The Agreement is clear, in no uncertain terms, the relationship of Delancey Street and MJA is as independent contractors. *See* Exhibit B, §10.1. Additionally, the Agreement is clear, in no uncertain terms, that MJA should comply with all laws and ethical standards. *See* Exhibit B, §§6.1, 6.2.

When read together, these sections of the Agreement are clear that Delancey Street and MJA were independent contractors of one another, and that Delancey Street required MJA to comply with all applicable federal, state, and local laws, regulations, and industry standards governing its activities under this Agreement, and most critically, that MJA shall comply with all applicable telemarketing, data privacy, and consumer protection statutes and regulations when identifying, qualifying, and referring prospective Clients.

The Agreement is clear – not only was MJA *not* an agent acting with actual authority, as Delancey Street did not have the ability to substantially control MJA's activities, and did not direct MJA to engage in certain practices in furtherance of the Agreement, but that Delancey Street clearly specific in the Agreement that MJA was *specifically forbidden* and *agreed not to violate any laws* in their work with Delancey Street.

Accordingly, the Complaint does not plausibly allege MJA acted with actual authority, and the Complaint should be dismissed with prejudice.

**b.  <u>Delancey Street Does Not Have Apparent Authority Over MJA</u>**

As to apparent authority, this theory of vicarious liability requires that a principal induce a third party, through words or conduct, to believe that an agent was authorized to act on behalf of

17

the principal. Statements by an agent alone are insufficient to create apparent authority; plaintiff must allege that the principal induced them. In *Cacho v McCarthy & Kelly LLP*, 739 F Supp 3d 195, 216 [SDNY 2024], the plaintiff did not allege any specific words or conduct of the defendant that would have "led a reasonable third party to believe that the telemarketers were acting on the defendant's behalf," or that an "appearance of authority" enabled the telemarketers to commit or conceal the claimed TCPA violations." (*Cacho v McCarthy & Kelly LLP*, 739 F Supp 3d 195, 216 [SDNY 2024]).

Delancey Street did not hold out MJA as possessing authority to make automated calls on its behalf. Instead, Delancey Street hired MJA as an independent contractor that was authorized to identify and qualify prospective clients that could benefit from Delancey Street's services and refer prospective clients to Delancey Street. *See* Exhibit B. The Complaint does not allege facts surrounding MJA's conduct that Plaintiff was aware of at the time of the text messages that reasonably led him to believe MJA was Delancey Street's agent. The Complaint does not contain any allegation that Delancey Street induced MJA into any actions. As noted above, the Agreement is clear, in no uncertain terms, the relationship of Delancey Street and MJA is as independent contractors. *See* Exhibit B, §10.1. Additionally, the Agreement is clear, in no uncertain terms, that MJA should comply with all laws and ethical standards. *See* Exhibit B, §§6.1, 6.2.

When read together, these sections of the Agreement are clear that Delancey Street and MJA were independent contractors of one another, and that Delancey Street required MJA to would comply with all applicable federal, state, and local laws, regulations, and industry standards governing its activities under this Agreement, and most critically, that MJA shall comply with all applicable telemarketing, data privacy, and consumer protection statutes and regulations when identifying, qualifying, and referring prospective Clients.

18

The Agreement is clear – not only was MJA *not* an agent acting with apparent authority, as Delancey Street did not direct MJA to engage in certain practices in furtherance of the Agreement, and did not acquiesce as to MJA's's actions, but that Delancey Street clearly specific in the Agreement that MJA was *specifically forbidden* and *agreed not to violate any laws* in their work with Delancey Street. Accordingly, the Complaint does not plausibly allege MJA acted with apparent authority, and the Complaint should be dismissed with prejudice.

### c.  <u>Delancey Street Did Not Ratify the Actions of MJA</u>

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01(1) (Am. L. Inst. 2006). A party "could ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id.* A purported principal, however, "is not bound by a ratification made without knowledge of material facts involved in the original at when the [party] was unaware of such lack of knowledge". *Id.* at §4.06.

As to ratification, the court in *Cacho v. McCarthy & Kelly LLP* also found that plaintiff failed to meet the standard. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized [conduct]." There, the court found plaintiff's complaint devoid of any "allegation from which one could reasonably infer that Defendant knew or should have known that the telemarketers were violating the TCPA." *Id.*

For Delancey Street to be held vicariously liable under an agency theory of ratification, it must have been aware of any allegedly "unlawful calls" made by MJA, and Delancey Street did not object or repudiate any benefits to it. Plaintiff does not allege that Delancey Street knew of

MJA's alleged conduct to satisfy the knowledge requirement. There are no allegations in the Complaint that MJDA affirmed any of MJA's actions. As such, MJA is not Delancey Street's agent under a ratification theory because there are no allegations of Delancey Street's affirmance of any alleged TCPA-prohibited conduct.

For those reasons, the Complaint does not allege sufficient facts to establish that MJA is an agent of Delancey Street under any theory of agency. The Complaint fails to connect even one potentially violative call to Delancey Street during a 12-month period. As Plaintiff has not plausibly alleged Delancey Street's direct or vicarious liability under the TCPA, Plaintiff's claims under §227(c) in Count 1 of the Complaint should be dismissed with prejudice.

### C. <u>Count 2 of the Complaint Should be Dismissed with Prejudice</u>

The Complaint alleges Violations of the TCPA, 47 U.S.C. § 227 (On Behalf of Plaintiff and the Telemarketing Caller ID Class) (Count 2). Count 2 specifies an alleged violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1601(e)(1) for making telemarketing calls without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. *See* Exhibit A, ¶56. The Complaint seeks damages pursuant to 47 U.S.C. § 227(c)(5). *See* Exhibit A, ¶60.

§64.1601(e)(1) prohibits telemarketers from appearing on telephone subscribers' Caller IDs as 'unknown' by requiring them to transmit certain Caller ID information, including the Calling Party Number ("CPN") or Automatic Numbering Information ("ANI"), and, if possible, the name of the telemarketer. The regulation provides, that "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information[,]". 47 C.F.R. § 64.1601(e)(1).

There have been decisions, albeit non-binding, which have analyzed both 47 C.F.R. § 64.1601(e) and the TCPA, 47 U.S.C. §227, to determine whether there is a right of action for a

violation of § 64.1601(e). Subsections (b) and (c) of the TCPA provide a private right of action for violations of those provisions. Every court to pass upon the question has ruled that §64.1601(e) does ***not*** have a private right of action as it does not fall under either subsection (b) or (c) of the TCPA. *See Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at \*4 (D. Md. Sept. 2, 2016), ("rule in § 64.1601(e) appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.") (emphasis in original); *Dobronski v. Selectquote Ins. Serv's*, 462 F. Supp. 3d 784 (E.D. Mich. 2020); *Dobronski v. SunPath Ltd.*, 2020 WL 8840311 (E.D. Mich. July 27, 2020); *Dobronski v Tobias & Assoc., Inc.*, 2024 US Dist LEXIS 47309, at \*11-12 [ED Mich Mar. 18, 2024, No. 23-10331]; *Dobronski v. Transamerica Life Ins. Co.*, No. 360506, 2023 Mich. App. LEXIS 3789, 2023 WL 3665869, at \*8 (Mich. Ct. App. May 25, 2023)). (ECF No. 37, PageID.321-322; ECF No. 38, PageID.328). Although this issue has not been addressed by this Court or by the Second Circuit, these decisions are persuasive, and without any contrary authority, Delancey Street urges this Court to rely on this persuasive authority from other jurisdictions that has held that 47 C.F.R. § 64.1601(e) does not create a private right of action.

Additionally, §§10.1 and 6.1-6.2 of the Agreement between Delancey Street and MJA are relevant as to this cause of action as well. *See* Exhibit B. Delancey Street and MJA are independent contractors of one another. The Agreement required MJA to comply with all applicable federal, state, and local laws, regulations, and industry standards governing its activities under the Agreement, and most critically, that MJA shall comply with all applicable telemarketing, data privacy, and consumer protection statutes and regulations when identifying, qualifying, and referring prospective Clients. The Agreement is clear –MJA was *not* an agent acting with apparent authority, as Delancey Street did not direct MJA to engage in certain practices in furtherance of

21

the Agreement, and did not acquiesce as to MJA's actions. Delancey Street clearly specific in the Agreement that MJA was *specifically forbidden* and *agreed not to violate any laws* in their work with Delancey Street. If MJA was required to include caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier the name of the telemarketer in the transmission of telemarketing calls, the alleged failure to do so cannot be attributed to Delancey Street. Therefore, Count 2 of the Complaint should be dismissed with prejudice.

### D. Count 3 of the Complaint Should be Dismissed with Prejudice

Plaintiff brings a claim against Delancey Street pursuant to 47 U.S.C. § 227 for Violations of the TCPA, 47 U.S.C. § 227 (On Behalf of Plaintiff and the Internal DNC Class) (Count 3). *See* Exhibit A, ¶¶62-64. Fatally, the Complaint does not allege a specific violation of 47 C.F.R. § 64.1200(d) as to the alleged violation of the internal do not call list. As Plaintiff does not allege a specific cause of action as to the alleged violation of the internal do not call list, Count 3 of the Complaint should be dismissed with prejudice.

In addressing the allegations that are set forth in Count 3 of the Complaint – the general allegation that Delancey Street committed "numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the *Internal* Do Not Call [list]" – Plaintiff's allegation implicates 47 C.F.R. § 64.1200(d), which limits the ability of telemarketers to call residential telephone subscribers without first implementing a set of do-not-call procedures. Under 47 C.F.R. § 64.1200(d):

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. *Id.*

4935-9903-1376, v. 1

The regulation provides a set of minimum requirements for a party's internal do-not-call procedures. 47 C.F.R. § 64.1200(d)(1)-(6). Put simply, § 64.1200(d)(3) requires that a party implement procedures that enable it to honor an opt-out request within a "reasonable" timeframe. *Id.* (*Hulett v Eyebuydirect, Inc.*, 2025 US Dist LEXIS 112645, at *3-5 [NDNY June 13, 2025, No. 1:24-cv-996 (AMN/MJK)]).

To successfully plead a TCPA claim under § 64.1200(d), a Plaintiff must plausibly allege, "that the entity placing the calls failed to institute the proper procedures *prior* to the initiation of the call." *Barr v. Macys.com, LLC*, 1:22-cv-07867 (ALC), 2023 U.S. Dist. LEXIS 176653, 2023 WL 6393480, at *4 (S.D.N.Y. Sep. 29, 2023) (emphasis in original) (quoting *Simmons v. Charter Commc'ns, Inc.* 222 F. Supp. 3d at 131). At issue, then, is whether, *at the pleading stage*, and in the absence of concrete information as to a defendant's internal procedures, a complaint's allegation that a defendant continued to message a plaintiff after an opt-out request, alone, supports the inference that the defendant lacked the internal procedures and policies required by § 64.1200(d).

In *Barr*, the district court suggested that allegations similar to those alleged here may be insufficient to survive a motion to dismiss. The court found that a plaintiff had failed to plausibly allege a violation of § 64.1200(d) after finding that "there [was] no evidence Plaintiff made [] a request [for the written policy]" and that plaintiff's allegations of deficient internal procedures were based solely on plaintiff's receipt of text messages one business day after an opt-out request. 2023 U.S. Dist. LEXIS 176653, 2023 WL 6393480, at *5-6. The court characterized the plaintiff's allegations of procedural deficiencies as "conclusory" and found that they "failed to adequately dispute the existence of [d]efendant's internal [do-not-call] list and policies, or that defendant's procedures were lacking in any way." *Id*. Thus, *Barr* stands for the proposition that parties relying

23

solely on allegations of continued text messages in violation of opt-out requests, like Plaintiff, have failed to plausibly allege a violation of § 64.1200(d).

This Court adopted the reasoning in *Barr*, in *Hulett v Eyebuydirect, Inc.*, 2025 US Dist LEXIS 112645, at *8-21 [NDNY June 13, 2025, No. 1:24-cv-996 (AMN/MJK)]. Allegations of continued telemarketing calls *may be* sufficient to plausibly suggest a defendant is liable, particularly where the alleged period of continued telemarketing is arguably unreasonable (such as several weeks or months, or where other facts tip the scales in favor of plausibility. Allegations which demonstrate that a plaintiff's opt-out request was honored *within a reasonable period* may undermine the complaint's ability to support an inference of § 64.1200(d) liability, especially when paired with a plaintiff's failure to request a defendant's internal policy.

Applying this analysis in *Hulett*, Plaintiff here has failed to plausibly allege that Delancey Street is liable. The Complaint asserts that Plaintiff David Tom received eight (8) text messages over a period of four (4) days, only three (3) of which messages were after Plaintiff requested to opt-out of future text messages. Absent more, these allegations are insufficient to tip the scales in favor of plausibility because, as a matter of law, they do not allege an unreasonable delay in honoring Plaintiff's opt-out request. This Court in *Hulett* held that the allegations in that complaint warranted dismissal at the pleadings stage. As was found in *Hulett*, the alleged delay here, of three (3) days is likewise reasonable under § 64.1200(d)(3). Therefore Count 3 of the Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant DELANCEY STREET GROUP LLC (IMPROPERLY PLED AS DELANCEY STREET GROUP LLP D/B/A MCA JUSTICE) respectfully requests this Court enter an Order dismissing Plaintiff's Complaint in its entirety

pursuant to FRCP 12(b)(6), with prejudice, and such other and further relief as this Court deems just and proper.

Dated:          New York, New York
                June 23, 2025

                                        Respectfully submitted,
                                        LONDON FISCHER LLP

                            By:     */s/ Thomas Leghorn*
                                    Thomas A. Leghorn, Esq. (TL6244)
                                    *Attorneys for Defendant DELANCEY STREET*
                                    *GROUP LLC (IMPROPERLY PLED AS*
                                    *DELANCEY STREET GROUP LLP D/B/A MCA*
                                    *JUSTICE)*
                                    59 Maiden Lane
                                    New York, New York 10038
                                    (212) 972-1000
                                    TLeghorn@londonfischer.com

TO:      Andrew Roman Perrong, Esq.
         Perrong Law LLC
         *Attorneys for Plaintiff*
         2657 Mount Carmel Avenue
         Glenside, Pennsylvania 19038
         Phone: 215-225-5529 (CALL-LAW)
         Facsimile: 888-329-0305
         a@perronglaw.com

         Anthony Paronich, Esq.
         Paronich Law, P.C.
         *Attorneys for Plaintiff*
         350 Lincoln St.
         Suite 2400
         Hingham, Massachusetts 02043
         Phone: 617-485-0018
         Fax: 508-318-8100
         anthony@paronichlaw.com

4935-9903-1376, v. 1