IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAVID TOM,** individually and on behalf of all others similarly situated, | Case No. 1:25-cv-00566-GTS-DJS |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **DELANCEY STREET GROUP LLC** and **MJA HOLDINGS, INC.** d/b/a MCA JUSTICE | |
| *Defendant.* | |

### FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff David Tom ("Plaintiff" or "Mr. Tom") brings this Class Action Complaint and Demand for Jury Trial against Defendant Delancey Street Group LLC and MJA Holdings, Inc. d/b/a MCA Justice ("Defendants") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that MJA Holdings, doing business as MCA Justice violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls. These calls were placed by MJA for the benefit of Delancey Street Group LLC, who hired MJA to place the calls at issue.

## PARTIES

4. Plaintiff David Tom is an individual.

5. Defendant Delancey Street Group LLC, is a New York-based company that sells services related to loan and debt restructuring and creditors' rights.

6. Defendant MJA Holdings, Inc. is a telephone lead generator, which does business under illegal unregistered fictitious name MCA Justice, also located in New York.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has general personal jurisdiction over Delancey Street because it is a resident corporation of New York. This Court has general personal jurisdiction over MJA Holdings, Inc. d/b/a MCA Justice because it is a resident corporation of New York.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of this State and Delancey Street is a resident of this District, having its registered office in Albany.

## BACKGROUND

**A.    The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

3

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

17. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the calls at issue.

19. Plaintiff's telephone number, (321) XXX-XXXX, is a residential, non-commercial telephone number.

20. Mr. Tom uses the number for personal, residential, and household reasons.

4

21. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

23. Plaintiff's business is that of a federal firearms licensee and manufacturer.

24. However, the Plaintiff does not use the telephone number at issue to "engage in the business of importing, manufacturing, or dealing in firearms," because he does not use the telephone number in the "regular course of trade or business with the principal objective of livelihood and profit." *Cf.* 18 U.S.C. § 922(a)(1)(A); 921(a)(21)(A). He thus does not use it for his business.

25. Plaintiff does not, for example, advertise the number on his business' website.

26. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there over a year prior to the calls at issue.

27. Plaintiff has never been a customer of MJA Holdings, MCA Justice, or Delancey Street.

28. In fact, the Plaintiff had similar communications from Defendant Delancey Street in March of 2022, and requested that Delancey Street cease contacting him at that number at that time.

29. Despite that fact, the Plaintiff received over eight telemarketing text messages from Defendant MJA on behalf of Delancey Street, starting on March 6, 2025, and continuing through present.

30. The text messages and calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the

Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | Date | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|---|
| 6313146017 | 03/06/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/06/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/06/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/06/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/06/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/07/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/08/2025 | Y | BABYLON NY | BANDWIDTH |
| 6313146017 | 03/10/2025 | Y | BABYLON NY | BANDWIDTH |

  31. As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier, Bandwidth, provided CNAM functionality, but the CNAM functionality transmitted a geographic location and not Delancey Street's name or telemarketer MJA's name.

  32. Bandwidth provides its customers and other users the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, Bandwidth's default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

  33. The Plaintiff received the following text messages:



34.	Plaintiff replied "Yes" to identify the caller contacting him illegally using an illegal fictitious name and for no other reason.

35.	As reproduced above, the text messages all came from the illegally and fictitiously named "MCA Justice."

36.	Defendant Delancey Street contends that "MCA Justice" is an alias for Defendant MJA. However, as outlined below, Delancey's contract with MJA split all fees with MJA for customers generated through these texts, including after termination of the parties' agreement.

37.	Also as reproduced above, the Plaintiff stated "Don't text me email me only," but the Defendant MJA continued to text Plaintiff 6 more times.

7

38. Defendant MJA illegally uses the fictitious name "MCA Justice." Delancey Street apparently authorized Defendant MJA to claim that the name "MCA Justice" is a "marketing arm" for Delancey Street's company to hide ill will for Delancey Street, whose services were promoted:

> On Mon, Mar 10, 2025 at 1:10 PM <john@mca-justice.com> wrote:
>
> The attorney works on all files throughout the US. He is the attorney who just won the case in NY for the subway choke defendant. Steven M. Raiser of Raiser & Keniff Law
>
> From: David Tom <david.m.tom@gmail.com>
> Sent: Monday, March 10, 2025 12:57 PM
> To: john@mca-justice.com
> Subject: Re: MCA Justice
>
> Okay so help me figure this out - if Delancey street is in new york, and you're in new york - I'm in Florida, do you have an attorney that is working in NY or Florida to work on my situation?
> On Mon, Mar 10, 2025 at 12:54 PM <john@mca-justice.com> wrote:
>
>> We are a marketing arm for Delancey Street. Delancey Street is the actual Organization that will be handling the MCA Debt Restructure.
>
> From: David Tom <david.m.tom@gmail.com>
> Sent: Monday, March 10, 2025 12:36 PM
> To: john@mca-justice.com
> Subject: Re: MCA Justice
>
> I am very confused here. You say your company is MCA justice - there's no company that I found registered with that address.
>
> Then you say check the reviews at delancy street which is an entirely separate company doing a different business. How does this make sense?
> On Thu, Mar 6, 2025 at 1:33 PM <john@mca-justice.com> wrote:
>
>> That is our Attorney
>
> From: David Tom <david.m.tom@gmail.com>
> Sent: Thursday, March 6, 2025 1:26 PM

39. In fact, the email also includes a link to Delancey Street:

**What We Do:**
1. Secure reduced, affordable payment terms in writing.
2. Mitigate collection tactics with attorney-led representation.
3. Prevent future advances from being taken.
4. Negotiate additional principal reductions as cash flow improves.

**To move forward, our team will need to review your application in order to make sure we can help:**
1. Please use this link to fill out our short application here - https://mcajustice.com/jg-pre-approval-app

Feel free to review testimonials on www.delanceystreet.com. Our firm is co-owned by Steven M. Raiser of Raiser & Keniff Law, a legal analyst featured on CNN, FOX, and Court TV.

Let me know if you have questions or need clarification—I'm here to help!

John Guzzetti
Customer Support at MCA Justice.

40. In other words, "MCA Justice" is an alias that Defendant MJA used to cover up the fact that it was doing marketing work for Defendant Delancey Street.

41. Indeed, the email was to schedule an onboarding call with a Delancey negotiator, as Delancey Street and MJA agreed to in their agreement. As such, any reasonable consumer or recipient would assume that "MCA Justice" was Delancey.

42. As further demonstrated and evidenced through these emails, Defendant MJA was apparently authorized to state that Delancey Street is "our firm" and that "Steven M. Raiser" is "our attorney."

43. In other words, Defendant MJA is a lead generator who was hired by Delancey Street to sell leads to Delancey Street.

44. The purpose of the calls sent by Defendant MJA was therefore to solicit the Plaintiff to sign up for the Defendant Delancey Street's services.

45. Delancey Street relies on telemarketing to generate new customers through vendors it uses, like MJA.

46. Delancey Street hired MJA to contact potential new leads and customers *en masse* and only sell them the purportedly interested ones.

47. The Plaintiff did not consent to telemarketing calls from the Defendants.

48. The Plaintiff never did business with the Defendants.

49. The calls were not necessitated by an emergency.

50. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

51. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

52. The FCC has instructed that sellers such as Delancey Street may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such MJA:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

53. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

54. Delancey Street is liable for Defendant MJA's conduct and telemarketing calls placed by MJA and transferred to Delancey Street and its agents to generate customers for Delancey Street and its agents, including the Plaintiff.

55. Delancey Street was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

56. To do so, Delancey Street hired MJA to orchestrate an *en masse* telemarketing campaign for MJA to contact customers by telephone.

57. A reasonable seller like Delancey Street whose agents are sending text messages would investigate into the reasons why their agents and telemarketers would be sending text

messages to numbers on the do not call registry without consent, let alone why MJA would continue to text people after they asked only to be contacted by email.

58. It did not, despite expressly reserving the right to terminate MJA for unlawful conduct.

59. Delancey Street hired MJA without a proper investigation and did not terminate them when they were informed of MJA's illegal calling conduct.

60. As such, they knowingly ratified MJA's conduct.

61. Moreover, the contract between Delancey Street and MJA contains numerous hallmarks of agency.

62. The contract between Delancey Street and MJA brims with indicia of actual authority. For example, Delancey Street reserved the right to "review and assess the eligibility of every client" funneled by MJA and could demand immediate retrieval of any call recording (or text message transcript), showing hands-on control of the very telemarketing conduct at issue.

63. Delancey Street dictated the means and manner of outreach by binding MJA to Delancey's own compliance policies, as well as by requiring ongoing performance reports that let Delancey course-correct MJA's calling practices at will.

64. Weekly commissions flowed only after Delancey Street confirmed a client, and Delancey reserved the right to change any customer's downstream credit card payment processor while at the same time giving MJA the right of first refusal before doing so.

65. Indeed, Delancey paid MJA fifty percent of Delancey Street's cut, an economic lever that kept MJA dependent and firmly under Delancey's direction.

66. Moreover, Delancey Street obligated itself to continue paying commissions on client payments collected after termination of their agreement, while simultaneously accepting every "Client Payment" purportedly for Delancey Street's own account, conduct that ratified and

11

benefited from MJA's telemarketing activities and which had the practical effect of each client being a *mutual client* of MJA and Delancey, as both would continue to receive commissions and payments so long as the client remained enrolled.

67. In other words, Delancey Street reaped and applied every "Client Payment" that resulted from MJA's calls, then continued to pay residual commissions even after contract termination, classic ratification conduct showing it knowingly benefitted from and adopted MJA's telemarketing.

68. Although the Agreement labeled the parties as purportedly "independent contractors," Delancey Street retained mutual indemnification rights that allowed it to control the defense of any claim arising from MJA's calls, demonstrating that Delancey desired to assume responsibility for the defense of those calls made by MJA.

69. From the consumer's perspective, MJA wields apparent authority: it enrols clients, sets up initial payments, and presents Delancey policies and materials as its own, making any reasonable called party believe the caller is Delancey itself.

70. As demonstrated from the Plaintiff's own experience, MJA enrolled consumers under the Delancey Street name, scheduled initial payments, and arranged onboarding calls with Delancey's "assigned negotiator," before any of Delancey's staff became involved, actions that would have led reasonable called parties to believe MJA was authorized to act on Delancey's behalf or that MJA *was* Delancey Street, thereby creating apparent authority.

71. Taken together, these provisions, especially the provision for residual commissions, and authorization to use Delancey Street's name, shows far more than an arms-length vendor relationship. They establish that MJA acted as Delancey's agent, giving rise

to vicarious liability under the TCPA through actual authority, apparent authority, and ratification.

72. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

73. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

74. The calls were unwanted.

75. The calls were nonconsensual encounters.

76. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

77. Plaintiff never provided his consent or requested the calls.

78. Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

79. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

80. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **MJA National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from MJA or a third party acting on MJA's behalf, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
>> **Delancey National Do Not Call Registry SubClass**: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from MJA or a third party acting on MJA's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint; (5) that advertised, or were intended to advertise, Delancey Street's goods and services.
>
> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (4) within the four years prior to the filing of the Complaint.
>
> **Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

81. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

82. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing

calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

83. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

84. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

   a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

   b. whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

   c. whether Defendants transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

   d. Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

  e. Whether Defendants should be held liable for violations committed on its behalf, together with the corresponding nature and extent of liability as between and among the Defendants; and

  f. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

85. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

86. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

16

c.  Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.  Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

87. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

88. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

89. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

90. These violations were willful or knowing.

91. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

92. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

93. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

95. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

96. These violations were willful or knowing.

97. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

98. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III

**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Internal DNC Class)**

99.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

100.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

101.  Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

102.  As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendants for:

A.  Certification of the Classes as alleged herein;

B.  Appointment of Plaintiff as representative of the Classes;

C.  Appointment of the undersigned as counsel for the Classes;

D.  Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E.  Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the

National Do Not Call Registry, to those who have asked them to stop, or while failing to transmit the caller ID information required by law;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 14th day of July, 2025.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
N.D.N.Y. Bar #705756
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date.

RESPECTFULLY SUBMITTED AND DATED this 14th day of July, 2025.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
N.D.N.Y. Bar #705756
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com